IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JOHN ROGER SIMPSON, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. CCB-22-2352 |
| ACTING WARDEN ORLANDO JOHNSON, *et al.*, | * | |
| | * | |
| Defendants. | | |

\*\*\*

## MEMORANDUM OPINION

Self-represented plaintiff John Roger Simpson filed the above-captioned civil rights action pursuant to 42 U.S.C. § 1983 against Patuxent Institution ("Patuxent") Acting Warden Orlando Johnson and Chief of Security Winnie Mott. ECF No. 1. In his initial filing, titled "Motion for Mandatory Injunctive Relief," Simpson sought an Order removing "certain sanctions imposed by Defendants related to his receipt of a piece of mail" that he intended to present at a parole hearing on October 1, 2022. *Id.* Specifically, he asked to be: (1) removed from Administrative Segregation; (2) permitted to remain in general population at Patuxent; (3) allowed to return to the Georgetown College Program; and (4) granted visitation privileges with his friend, Mikita Brottman. *Id.*

On September 28, 2022, the Attorney General of Maryland opposed Simpson's demand for injunctive relief (ECF No. 4),[1] and on January 27, 2023, counsel for defendants filed a motion to dismiss, or in the alternative, for summary judgment (ECF Nos. 14, 15). Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court informed Simpson that the failure to file a

---

[1] On September 30, 2022, the court received correspondence from Simpson asking to hold defendants in contempt for failure to respond to his motion for mandatory injunctive relief. ECF No. 8. Because the court had, in fact, received the government's response two days prior, Simpson's request is denied as moot.

memorandum in opposition to defendants' motion could result in dismissal of the complaint. ECF No. 16. Simpson did not file a response. Rather, Brottman filed a motion to intervene as a party-plaintiff (ECF No. 17) and Simpson moved for appointment of counsel (ECF No. 21). After defendants opposed the motion to intervene (ECF No. 22), Simpson sought permission to amend his complaint (ECF No. 24), which defendants also opposed (ECF No. 26).

Having reviewed the submitted materials, the court finds that no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2021). For the reasons set forth below, defendants' dispositive motion, construed as a motion for summary judgment, will be granted. Simpson's motion to amend the complaint will be denied. As the case is not proceeding, Brottman's motion to intervene and Simpson's motion for appointment of counsel shall also be denied.

## Background

### A. Simpson's Allegations

Simpson alleges that on March 28, 2022, he was transferred from Western Correctional Institution to Patuxent "after he was accepted as a student in the Fall cohort of the Georgetown University Prison Scholars Program" ("Georgetown Program"). ECF No. 1 at 2. On August 18, 2022, Simpson was removed from his cell and placed on Administrative Segregation after being deemed a security threat. *Id.* The following day, he was told that he would be transferred to a different institution and removed from the Georgetown Program. *Id.* Subsequently, Simpson was informed that the sanctions were imposed as a result of his receipt of mail sent by Brottman, which included "a typed letter with information about different kinds of psychological and assessment tests." *Id.* at 2-3. According to Simpson, Brottman "intended to explain how such tests work and to demystify their scoring scales," given that Simpson underwent a psychological assessment test

prior to resentencing in 2019.  *Id.* at 3.  When Simpson asked why the materials were considered contraband, he was told, "We don't know where she got them."[2]  *Id.*

Simpson states that Brottman is a college professor and psychoanalyst who has been banned from visiting him.  *Id.*  He alleges that he has had no infractions since 2014 and was told that the sanctions at issue were not punitive.  *Id.* at 4.  Simpson claims that the sanctions do not serve a compelling government interest and defendants will not suffer harm if they are lifted.  *Id.*  He asserts that the appropriate remedy is to censor the material.  *Id.* at 4, 5.

### B. Defendants' Response

According to defendants, Simpson was transferred to Patuxent on March 28, 2022, after he was waitlisted for the Georgetown Program at Patuxent.[3]  Decl. of Kristina Donnelly, ECF No. 4-4 at ¶¶ 2, 4.  On August 17, 2022, staff in the Patuxent mailroom alerted Lt. Robert G. Saliby, an Intelligence and Investigations Division officer, that they had received an envelope addressed to Simpson containing blotter paper and potential controlled dangerous substances.  Decl. of Saliby, ECF No. 4-5 at ¶ 3.  The envelope, which was marked "Media Mail," identified the sender as the pastor of a non-existent church at a non-existent address.  *Id.* at ¶¶ 5, 7, 8.  The first six pages of the envelope's contents contained religious references but the pages that followed contained "typewritten and handwritten [notes] about risk assessment tests and advice on how to score well on them."  *Id.* at ¶ 7.  The back of the seventh page also included a personal note signed "Love, Mikita."  *Id.*  Lt. Saliby made photocopies of the contents, which were delivered to Simpson.  *Id.* at ¶ 6.

---

[2] Simpson states that he did not ask Brottman to send the documents, which he asserts are publicly available online.  ECF No. 1 at 3.

[3] As of August 18, 2022, case management staff had not assigned, nor had the managing official approved, Simpson's participation in the Georgetown Program.  ECF No. 5 at ¶ 3.

On the morning of August 18, 2022, Lt. Saliby reported the mailing to Patuxent Director Dr. Erin Shaffer. *Id.* at ¶ 9. When Dr. Shaffer reviewed the envelope and its contents, she saw that the envelope contained highly sensitive risk assessment testing materials that Patuxent uses for the Maryland Parole Commission ("MPC") to determine whether to grant parole to inmates serving life sentences.[4] Decl. of Shaffer, ECF No. 5 at ¶ 9 (filed under seal). The sender included advice on how to score well on those tests and samples of what the sender represented in her handwriting as "correct" answers to over 200 items. *Id.*; ECF No. 4-5 at ¶ 7. After Dr. Shaffer identified the significance of the testing materials and advice, photocopies of the documents were confiscated from Simpson, and he was assigned to administrative segregation. ECF No. 4-5 at ¶¶ 15-16. Subsequently, Brottman was determined to be the sender of the envelope and its contents. *Id.* at ¶¶ 12, 18-20; *see also* ECF No. 1.

Defendants note that Simpson was not scheduled for a parole hearing on Saturday, October 1, 2022, as he had alleged. ECF No. 4 at 7. Indeed, as of September 27, 2022, nearly two weeks after Simpson initiated this action, the MPC had not yet scheduled a hearing date for him. Decl. of MPC Chairman David R. Blumberg, ECF No. 4-1 at ¶ 4. In any event, the MPC does not schedule parole hearings for Saturdays. *Id.*

On August 21, 2022, Simpson made two phone calls to Brottman, one at 10:09 a.m. ("Audio 1") and another at 4:58 p.m. ("Audio 2"). ECF No. 4-2 (call recordings). Prior to connecting both calls, the phone system notified Simpson and the call recipient that the call would be "recorded and monitored." *Id.* During the first phone call, Brottman speculated that Simpson had been sanctioned because she sent him risk assessment tests, although she did not believe them to be contraband. Audio 1 at 1:28-1:56. Brottman acknowledged, however, that she used a fake

---

[4] According to defendants, Simpson is serving a life sentence for first-degree murder. ECF No. 4-4 ¶ 1.

church address to send the materials surreptitiously, and that she had previously done so on other occasions to ensure Simpson's receipt. *Id.* at 4:06-5:02; 7:40-8:17, 25:00-26:00; *see also* Audio 2 at 3:08-5:45. Moreover, Brottman recognized that it looked like she stole and sent the test materials in an effort to coach Simpson, as it contained information that psychologists use. Audio 1 at 8:35-8:43; 28:00-29:24. Thus, she could see why prison staff would not want Simpson to have them. *Id.* at 23:50-24:07.

On September 26, 2022, Simpson was transferred from Administrative Segregation at Patuxent to general population at the Roxbury Correctional Institution ("RCI"). ECF No. 4-4 at ¶¶ 9, 10. Before filing this lawsuit, Simpson did not file any grievances through the Administrative Remedy Procedure ("ARP") at either Patuxent or RCI. Decl. of Donnelly, ECF No. 14-2; Decl. of RCI ARP Coordinator Sgt. Karen Hays, ECF No. 14-3.

## Standards of Review

Defendants move to dismiss the complaint for failure to state a claim or, alternatively, for summary judgment. The court's review of a Rule 12(b)(6) motion typically is limited to the pleadings, documents attached to the complaint, and the parties' briefs. *See* Fed. R. Civ. P. 12(b)(6), 12(d); *see also* Fed. R. Civ. P. 10(c). The court also may consider documents integral to and explicitly relied on in the complaint when their authenticity is not disputed. *See Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 607 (4th Cir. 2015). When the parties present and the court considers matters outside the pleadings on a Rule 12(b)(6) motion, the court must treat the motion as one for summary judgment under Rule 56, and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

Summary judgment is appropriate when the moving party establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  To meet its burden, the party must identify "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" in support of its position. Fed. R. Civ. P. 56(c)(1)(A).  Then, "[t]o avoid summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue for trial." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 205 (4th Cir. 2019) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  The opposing party must identify more than a "scintilla of evidence" in support of its position to defeat the motion for summary judgment. *Id.* at 251.  The court "should not weigh the evidence." *Perkins*, 936 F.3d at 205 (quoting *Anderson*, 477 U.S. at 249).  However, if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," then summary judgment is proper. *Id.* (quoting *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  In ruling on a motion for summary judgment, this court "view[s] the facts and inferences drawn from the facts in the light most favorable to . . . the nonmoving party." *Perkins*, 936 F.3d at 205 (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 958 (4th Cir. 1996)).

## Analysis

### I. Exhaustion

Defendants raise the affirmative defense that Simpson has failed to exhaust his administrative remedies.  The Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility

until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003).

Exhaustion under § 1997e(a) is mandatory, and therefore the plaintiff must exhaust his available administrative remedies before this court will hear his claim. *See Ross v. Blake*, 136 S. Ct. 1850, 1857 (2016); *Jones v. Bock*, 549 U.S. 199, 215–16 (2007); *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.2d 674, 682 (4th Cir. 2005). Consequently, if Smith has not properly presented any of his claims through an available administrative remedy procedure, that claim must be dismissed pursuant to the PLRA. *See Ross*, 136 S. Ct. at 1857.

To exhaust his administrative remedies, an inmate must complete "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006); *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits).'" *Woodford*, 548 U.S. at 93 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)) (emphasis in original). The court will not dismiss a claim as unexhausted "if a prisoner, through no fault of his own, was prevented from availing himself of [an administrative remedy]." *Moore*, 517 F.3d at 725.

Here, defendants aver that Simpson did not file any grievance relating to the claims raised here, and Simpson has not alleged otherwise. Because the PLRA requires inmates to pursue and

7

exhaust all available administrative remedies before filing suit, and Simpson failed to do so, his claims may not proceed. *See* 42 U.S.C. § 1997e(a).

## II. No Constitutional Claims

Even if the court proceeded to review the substance of Simpson's complaint, his claims would nonetheless fail. It is well established that prisoners do not have a constitutional right to access programs or to demand to be housed in one prison rather than another absent a showing of significant hardship. *See Sandin v. Conner*, 515 U.S. 472, 484 (1995). "[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the Constitution." *Meachum v. Fano*, 427 U.S. 215, 224 (1976). Courts must accord great deference to decisions regarding the administration of a prison facility. *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). As the Supreme Court has cautioned, "[t]he difficulties of operating a detention center must not be underestimated by the courts." *Florence v. Bd. of Chosen Freeholders of Cty. of Burlington*, 566 U.S. 318, 326 (2012). Therefore, Simpson's requests to be removed from Administrative Segregation, permitted to remain in general population at Patuxent, and approved for the Georgetown Program all lack merit.[5]

Similarly, maintaining visiting privileges does not implicate a protected liberty interest. Withdrawal of visiting privileges is "not a dramatic departure from accepted standards for conditions of confinement." *Overton v. Bazzetta*, 539 U.S. 126, 137 (2003) (citing *Sandin*, 515 U.S. at 485). Where the suspension of visiting privileges is tied to prisoner misconduct, it does not violate the Eighth Amendment. *Id.*

---

[5] In any event, because Simpson is now housed in general population at RCI, his request to be removed from Administrative Segregation is moot. *See United States v. Hardy*, 545 F.3d 280, 283 (4th Cir. 2008) (stating that a case is deemed moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome") (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)).

Here, Simpson seeks to have his visitation privileges with Brottman reinstated. However, based on the evidence presented by defendants regarding Brottman's actions, the withdrawal of visiting privileges with her seems warranted. As defendants point out, Brottman sent Simpson documents that could be helpful in his upcoming parole hearing and did so under the guise of purported religious mail. The court agrees with defendants that the authenticity of an inmate's risk assessment test performance is important to prevent an inmate who is dangerous from being released under false pretenses of a coached performance. Thus, Brottman's actions – which, she acknowledged, appeared to be an effort to coach Simpson – created a possible security risk at Patuxent that needed to be stopped.

On this record, defendants are entitled to summary judgment. Therefore, their dispositive motion will be granted. Because Simpson has failed to assert any facts that demonstrate he is likely to succeed on the merits, his request for injunctive relief shall be denied. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (stating that a party seeking injunctive relief must demonstrate: (1) a likelihood of success on the merits; (2) a likelihood of suffering irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the party's favor; and (4) why the injunction is in the public interest)).[6]

### III. Brottman's Motion to Intervene

Brottman has filed a Motion to Intervene pursuant to Rule 24 of the Federal Rules of Civil Procedure, which states in pertinent part that:

> On timely motion, the court must permit anyone to intervene who (1) is given an unconditional right to intervene by a federal statute; or (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

---

[6] In light of the Court's ruling, it is not necessary to address defendants' additional arguments.

Fed. R. Civ. P. 24(a).

"[T]imeliness is a 'cardinal consideration' of whether to permit intervention" under Rule 24(a) and (b). *Houston Gen. Ins. Co. v. Moore*, 193 F.3d 838, 839 (4th Cir. 1999) (quoting *Brink v. DaLesio*, 667 F.2d 420, 428 (4th Cir. 1981)). The timeliness of a motion to intervene is subject to the trial judge's discretion because Rule 24 is silent as to when a party is required to submit the motion. *NAACP v. New York*, 413 U.S. 245, 365–66 (1973); *Black v. Cent. Motor Lines, Inc.*, 500 F.2d 407, 408 (4th Cir. 1974). District Courts in the Fourth Circuit are "obliged" to consider "(1) how far the underlying suit has progressed, (2) the prejudice any resulting delay might cause the parties,[7] and (3) why the movant was tardy in filing its motion." *Alt v. E.P.A.*, 758 F.3d 588, 591–92 (4th Cir. 2014) (citation omitted).

Even if this court finds that the motion to intervene is timely or that Brottman has an interest in having her visitation privileges reinstated, the denial of her motion would have no effect on Simpson's claims because, as explained above, they lack merit. Thus, Brottman cannot intervene as a matter of right, and the court declines to grant her permission to do so. *See* Fed. R. Civ. P. 24(b) (addressing permissive intervention). Brottman's motion to intervene shall be denied.

**IV. Simpson's Motions to Amend and for Counsel**

Also pending are Simpson's motion to amend the complaint pursuant to Rule 15(a)(2) and motion for appointment of counsel.

Rule 15(a)(2) states that "a party may amend its pleading only with the opposing party's written consent or the court's leave" and "[t]he court should freely give leave when justice so requires." In support of his motion to amend, Simpson states only that he seeks to "correct or clarify any errors in the original complaint" but he does not specify what those errors are, nor does

---

[7] The second consideration is the most important. *Hill v. W. Elec. Co.*, 672 F.2d 281, 385–87 (4th Cir. 1982).

he attach a proposed amendment. ECF No. 24. Given this limited information and in light of defendants' opposition, Simpson's motion to amend shall be denied. As the case is not proceeding, his motion for appointment of counsel shall also be denied. *See Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984) (recognizing that the Court appoints counsel only in exceptional circumstances, which hinges, in part, on whether the plaintiff has a colorable claim).

## Conclusion

For the foregoing reasons, defendants' dispositive motion, construed as one for summary judgment, will be granted. Brottman's motion to intervene and Simpson's motions for appointment of counsel and to amend the complaint shall be denied. A separate order follows.

| | |
|---|---|
| _____8/15/2023_____ | _____/s/_____ |
| Date | Catherine C. Blake |
| | United States District Judge |